consent judgment provided that judgment be entered in the two actions against Cohen for $32,500 and $325,000, and against Abraham for $17,500 and $175,000.

■ Since the form of judgment accurately reflected the stipulations of counsel, which had been placed on the record before Judge Drozdowski, the judge compelled plaintiff's counsel to execute the judgment as prepared, which omitted any reference to the Comparative Negligence Act. We agree with Judge Drozdowski's determination. Plaintiff's counsel failed to mention the Comparative Negligence Act when the proposed judgment terms were placed on the record. The parties simply agreed to maintain the proportional responsibility determined by the jury in the second trial under *N.J.S.A.* 2A:15–5.2. Thus, there was no basis to modify the settlement terms and plaintiff's contentions in his cross-appeal are rejected. The oral agreement was reflected in the form of judgment and was properly enforced.

Affirmed.

711 A.2d 1379

M.V., PLAINTIFF, v. J.R.G., DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Bergen County

Decided November 24, 1997.

*D. Gayle Loftis*, for plaintiff.

*Jeffrey G. Garrigan* for defendant (*Boffa, Shaljian, Commarata & O'Connor, L.L.C.* attorneys).

ESCALA, P.J.S.C.

This case comes before the court on defendant's motion to dissolve a Final Restraining Order (FRO) pursuant to *N.J.S.A.* 2C:25–29(d) of the Prevention of Domestic Violence Act of 1991 (the Act), some eight months after its issuance. Plaintiff opposes the application.

The history of the matter follows. Plaintiff and defendant engaged in a dating relationship that ended with a physical incident on or about December 8, 1996. Immediately thereafter, plaintiff, M.V., filed a domestic violence complaint against J.R.G., which resulted in the entry of a Temporary Restraining Order

(TRO) on December 9, 1996. As part of the order, defendant, a Hudson County Sheriff's Officer, was prohibited from possessing all firearms except for his service revolver while on duty. However, he was not in fact permitted to retain his service revolver, because Hudson County Sheriff's Department policy requires officers to carry their weapons at all times and his weapons were taken. Thereafter, defendant was placed on restricted duty.

The final hearing on this matter took place before me on December 27, 1996, resulting in a finding of an act of domestic violence and the issuance of an FRO prohibiting the defendant from future contact with plaintiff. At the trial, it was determined that defendant did not pose a danger in his possession of firearms. Therefore, I specifically deleted all firearms restrictions provisions from the FRO, allowing the defendant to possess and to carry his service revolver while on and off duty.

For the next several months, in proceedings not directly relevant to this application, J.R.G. attempted to obtain the return of his firearms, including his service revolver. The Hudson County Prosecutor's Office had moved for forfeiture of the weapons, but that action was later resolved in light of the provisions of the FRO and the fact that plaintiff did not object to the return of the defendant's weapons. Finally, pursuant to court order, all weapons were returned to him on June 16, 1997, and J.R.G. was taken off restricted duty.

However, on August 1, 1997, in yet another proceeding not related to this matter under the Domestic Violence Act, all of defendants's firearms, including his service revolver, were again seized, this time pursuant to 18 U.S.C. § 922(g)(8), which had been interpreted as prohibiting from possessing firearms anyone who has a domestic violence restraining order against him arising from certain statutorily defined relationships.[1]

---

[1] The court accepted the factual stipulation concerning the August 1997 seizure of the defendant's weapons by the County Prosecutor's office and the effect of 18 U.S.C. § 922(g). The court was not asked to, nor did it independent-

In his current application, J.R.G. is moving to dissolve the FRO under *N.J.S.A.* 2C:25–29(d). Such a dissolution would thereby remove him from the effect of the federal restrictions, so that he would have his service firearm returned and thereafter return to full, unrestricted duty in the Sheriff's Department. To support this application, he relies on the eleven factors enumerated in *Carfagno v. Carfagno*, 288 *N.J.Super.* 424, 672 *A.*2d 751 (Ch.Div. 1995): 1) the consent of the victim to lift the order, 2) the victim's objective fear of defendant, 3) the present relationship between the parties, 4) whether defendant has violated the order, 5) drug or alcohol involvement, 6) the existence of other violent acts by defendant, 7) whether defendant has been involved in counseling, 8) the age and health of defendant, 9) whether the victim's opposition is in good faith, 10) the existence of restraining orders in other jurisdictions, and 11) other factors deemed relevant by the court. *Id.* at 435, 672 *A.*2d 751. The Plaintiff opposes dismissal of the FRO in her answering papers. Her opposition raises factual disputes that a plenary hearing would resolve. But first, the court should apply a qualitative analysis of those factors that are relevant in determining whether an applicant has made a *prima facia* showing of good cause for the removal of the FRO. *Id.* at 442, 672 *A.*2d 751, *N.J.S.A.* 2C:25–29(d).

The New Jersey State Legislature has made it clear that violence against a family member, a significant other, or an individual with a similar domestic relationship will no longer be tolerated in our society. *See N.J.S.A.* 2C:25–17 to –33. To this end, victims may apply for protective restraints *ex parte* to prevent domestic violence and receive almost immediate relief in the form of a TRO. *N.J.S.A.* 2C:25–28. To balance the rights of

---

ly review the validity of the Prosecutor's actions in the other proceeding or the law for purposes of this hearing. In fact, the relevant Federal statute does not apply to restraining orders arising out of dating relationships. In any event, such consideration is not germane when determining whether the defendant has made the requisite showing of good cause under *N.J.S.A.* 2C:25–29(d). The defendant's application concerned the dissolution of an FRO, not the return of his firearms.

the accused with those of the victim, the TRO is of limited duration. Permanent relief is not available until after a full hearing on the merits. *N.J.S.A.* 2C:25–29(a) (hearing to be held within 10 days of order allowing *ex parte* restraints). For those parties who assert that a protective order is no longer warranted, the Act provides that "[u]pon good cause shown, any final order [granted under the Act] may be dissolved . . . upon application to the [court]. . . ." *N.J.S.A.* 2C:25–29(d). By implication, since good cause is not defined, the Legislature left the specifics of the good cause determination to the courts. However, when construing ambiguous statutory language, courts are required to look back to the legislative intent. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.2d* 399 (1982). The Legislature expressly states that victims of domestic violence are entitled to "the maximum protection from abuse that the law can provide." *N.J.S.A.* 2C:25–18. Final restraints granted under the Act do not have a statutorily imposed expiration date. See *N.J.S.A.* 2C:25–29. The permanency of the FRO in New Jersey is unlike the law in other states such as Massachusetts, Pennsylvania, and Connecticut, where there is an affirmative duty placed on the victim to reapply for the continuation of an order. For example, in Massachusetts, *M.G.L.A.* § 209A, § 3(i), provides that restraints last up to one year, at which point victim must appear in court to request an extension. In Pennsylvania, 23 *P.A.C.S.A.* § 6108(d) and (e) permit restraints to last up to one year, after which a formal petition must be filed, with notice to the defendant, and a hearing conducted to obtain an extension. The applicable Connecticut law, *CT.ST.* 46b–15(d), requires that restraints granted cannot exceed 6 months, at which time the victim must move for an extension. Instead, New Jersey sets a final hearing date within 10 days of the entry of an *ex parte* protective order. *N.J.S.A.* 2C:25–29(a). Thereafter, there is an affirmative duty upon a party to apply for the dissolution of the order. *N.J.S.A.* 2C:25–29(a) and (d).

Defendant has proposed in his motion that he is entitled to dissolution of the restraining order under the specifics of his

situation and because of the nature of his employment. He argues that there would be a hardship to him should he not be allowed to carry a firearm as a sheriff's officer. His argument is misplaced. While the legislation in question was designed to protect victims and not intentionally to punish defendants, there is also nothing in the statute to suggest that certain victims are entitled to less protection than others by virtue of the employment or personal situation of the defendant. *Carfagno, supra,* at 434, 672 A.2d 751, and *see N.J.S.A.* 2C:25–17 to –33.

Finally, it should be noted that *Carfagno,* although helpful with establishing a practical guide to determining good cause, does not deal specifically with the issue of the timing of the defendant's application. The FRO entered against Mr. Carfagno had been in effect for approximately three years prior to the application to have the FRO removed. *Carfagno,* 288 *N.J.Super.,* at 431, 672 A.2d 751. In contrast, in the case before this court, only eight months have passed since the protective restraints were entered. An FRO is by nature complete at the moment it is entered. *See N.J.S.A.* 2C:25–29. The defendant is provided with all of the protections afforded by the Constitution and our judicial system, including a hearing and the opportunity the present testimony, and evidence and to cross examine witnesses. *Id.* It is only after a full hearing on the merits and after a judge determines that an act of domestic violence has occurred, that an FRO can be entered. *Id.* In this case there was a hearing in which defendant, represented by counsel, actively participated, resulting in a determination that an act of domestic violence occurred, and an FRO was appropriate.

Therefore, it is appropriate that such an order be in effect for a reasonable time before the criteria cited as reasons for dissolution should be examined to determine their permanency and viability. *See Carfagno, supra,* at 442, 672 A.2d 751 (courts should consider any other factor deemed to be relevant when evaluating an application to dissolve an FRO), and also *see N.J.S.A.* 2C:25–18 (purpose of the Act is to provide victims with

maximum protection). The victim should not be forced to relitigate issues with the defendant soon after the FRO is entered. Also, there are no newly discovered facts that were not available at the time of the trial which might make a time limit inappropriate or unfair to the defendant. A minimum duration of time for the existence of the FRO will properly promote the State's interest in protecting the victims of domestic violence as well as the victim's right to depend on the protection and finality of a judgment. Any incidental prejudice to a defendant resulting from a delay of his right to apply for the dissolution of a final order is not dispositive, because a defendant had the opportunity in the first instance to request reconsideration of the order. He also had the right to appeal the final protective restraints. And, as previously stated, other jurisdictions do not approach domestic violence complaints with the expediency of New Jersey's 10–day requirement between entry of the *ex parte* order and the final hearing. In other states a temporary order may last for as long as a year, after which time it either expires or must be renewed by application of the victim. The Legislature did not include a similar time frame in the Act. *N.J.S.A.* 2C:25–29.

A fair interpretation of all of the statutory material pertaining to the Act leads to the conclusion that the passage of a reasonable time is necessary considering the emphasis on providing "maximum protection" to victims. *See N.J.S.A.* 2C:25–17 to –33. In the absence of the existence of compelling facts that would indicate that a shorter period should be required, in this particular case, I conclude that by analogy to other state's laws, a one-year stay of the right of defendant to apply for the dissolution of an FRO (in the absence of newly discovered evidence) is a reasonable time. Thus the victim is accorded the protection the State desires without improperly burdening the defendant. To allow otherwise would be to deny the victims of domestic violence the protection that a final judgment is meant to provide and permit defendants an effectively unlimited appeals process. Fitting this analysis in to established case law, the factors of *Carfagno* must be shown to have persisted for a reasonable time before such an application

should be considered. For example, non-violation of the order, occurrence of other acts of violence, relationship between the parties, etc. has existed for a reasonable period of time.

Therefore, I conclude that one year must expire from the date of the entry of the FRO before a defendant may make an application to dissolve an FRO under *N.J.S.A.* 2C:25–29(d), absent other exigent circumstances particular to that application. Accordingly, J.R.G.'s application is premature at this time as it was made after the expiration of only 8 months.

*PROPOSED ADDENDUM*

[Note: Subsequent to this decision, and after the expiration of twelve months, the defendant reapplied for dissolution of the final restraining order. The court took testimony. The criteria of *Carfagno, supra,* were considered. The FRO was dissolved.]