# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1937-20

K.B.,

    Plaintiff-Respondent,

v.

L.W.,

    Defendant-Appellant.

_____

Submitted December 15, 2021 – Decided March 16, 2022

Before Judges Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1014-15.

Gruber, Colabella, Liuzza, Thompson & Hiben, attorneys for appellant (Daniel P. Agatino, of counsel; Kristen C. Montella, on the briefs).

Michael R. Shulman, attorney for respondent.

PER CURIAM

Defendant L.W.[1] appeals from a February 8, 2021, Family Part order denying reconsideration of the denial of her motion to dissolve a domestic violence final restraining order (FRO) pursuant to <u>Carfagno v. Carfagno</u>, 288 N.J. Super. 424 (Ch. Div. 1995).  The FRO was entered in favor of plaintiff K.B. in 2015 based on the predicate act of assault.  The FRO had been entered in default when defendant failed to appear at the FRO hearing.  While this is the third time that defendant has attempted to vacate the FRO, this is the first time that she has sought appellate intervention.  After carefully reviewing the record in view of the governing principles of law, we affirm substantially for the reasons set forth in the motion court's written opinion.

I.

As we presume the parties are familiar with the pertinent facts and procedural history, we need only briefly summarize them here.  On January 29, 2015, plaintiff obtained a temporary restraining order (TRO) after reporting that "defendant hit her multiple times with a wooden hair brush in the head and jabbed her in the eye with the same hair brush."  A law enforcement officer personally served defendant with the complaint and TRO the same day.  Defendant acknowledged receipt of the TRO with her signature.  The parties

---

[1]  We identify the parties by initials to protect the identity of the victim of domestic violence.  <u>R.</u> 1:38-3(d)(9).

were ordered to appear for an FRO hearing on February 3, 2015, at 1:30 p.m. Defendant failed to appear, whereupon the Family Part judge conducted the FRO trial in defendant's absence.

The following facts were elicited at the FRO trial. Plaintiff testified that she and defendant had been in an intimate personal relationship beginning in December 2013 and continuing until plaintiff ended the relationship in August or September 2014. The parties continued to share the residence after the romantic relationship ended because "[defendant] refused to go."

Plaintiff testified that during a confrontation on January 27, 2015, defendant slapped her in the face and hit her on the back with a remote control. Plaintiff further testified that on January 29, 2015, defendant "took my wooden hairbrush and started to hit me and hit me in the head with the hairbrush, in the forehead and also in my head." Defendant also repeatedly hit her on the arm with a glass bottle. Plaintiff put her coat on and retrieved her purse, intending to leave the residence. Defendant "didn't allow" plaintiff to go.

Plaintiff went to work the following day. When plaintiff exited the building at the end of the workday, she saw defendant waiting outside. Defendant told plaintiff to "get in the car." Not wanting to "make a scene[,]" plaintiff complied. Plaintiff eventually managed to exit defendant's vehicle by making up an excuse that she had to do something at church. Plaintiff then

3

went to the police station and filed a complaint requesting a temporary restraining order.

Defendant contacted plaintiff by telephone in violation of the TRO's prohibition against any form of communication. Plaintiff notified police of the violation and defendant was arrested on February 1, 2015, and released two days later on February 3, 2015.

Based on the plaintiff's testimony at the FRO hearing, the trial court made the following findings on the record:

> I find that I have jurisdiction since the parties had a dating relationship and were in fact living together since December 2013 to around August or September of 2014, though they continued to live together thereafter.
>
> I also find and I heard the testimony from the plaintiff and I find her to be extremely credible, that in fact she was assaulted by the defendant. That she was struck in the head with a wooden stick, a wooden hairbrush. That [defendant] did so because [plaintiff] refused to speak to her. Because the night before [plaintiff] was assaulted by [defendant] by a remote control and a slap on the face. She was also hit on the left arm with a bottle.
>
> So[,] I find that she has met the predicate act of assault pursuant to 2C:12-1, where the defendant purposely or knowingly assaulted the plaintiff by causing bodily injury to her under section 12-1(a)(1). I find that the defendant did that purposely and knowingly.

4

I also find under [State v. Silver] that [plaintiff] is in fear of the defendant, that the defendant has had a prior history of assaulting [plaintiff] on occasion. And I also find that the fact that [defendant] has violated the orders twice will indicate to this court that she is a threat to the plaintiff and she is in need of a temporary restraining order. [Defendant] violated it by calling [plaintiff] immediately after being arrested and served with a temporary restraining order and again, by going to her church on Sunday, clearly knowing that she was not supposed to do so. That clearly indicates to this court that she is in need of a final restraining order in order to avoid any further acts of domestic violence.

So therefore[,] I will enter the order. It is now 2:25 and the defendant has not shown, so I will be entering it by default.

On February 5, 2015, defendant filed a motion for reconsideration, asking the trial court to "[r]econsider the decision of the FRO because I missed court due to being advised by the bail bondsman that I had to be there first. This is my first arrest, so I thought it was mandatory to meet with the bail bonds first. I was released on 2/3/15." The trial court denied the motion for reconsideration on February 12, 2015. So far as the record reflects, defendant did not appeal the entry of the FRO nor the denial of her first motion for reconsideration.

On August 13, 2015, defendant filed a new motion to vacate the FRO. Defendant asserted:

1. The simple assault that generated the FRO was dismissed in Linden Municipal court[;]

2. I didn't attend the hearing because I was checking in with . . . [B]ail [B]onds USA, in Newark, NJ. By the time I was notified and made it to court, the hearing was over and the FRO was entered in default[;]

3. The plaintiff attempted to contact me and I'm requesting that you tell her not to contact me.

That motion was denied on September 15, 2015. Defendant did not appeal that decision.

Defendant moved yet again to dissolve the FRO on March 11, 2020. This time, she cited changed circumstances, asserting that she hoped to become a Newark Police Officer and a resource parent. Defendant asserted that she had passed the written examination to become a police officer but the FRO barred her from being hired by the police department. She argued that the FRO unfairly restricted her career options and thus constituted an injustice. She also argued that the Carfagno factors weigh in favor of dissolving the FRO because she had attended six months of counseling; had no contempt convictions for violating the FRO; had never been accused of a violent crime in the intervening period; was gainfully employed by New Jersey Transit; and had enrolled in classes for her bachelor's degree.

The motion court conducted hearings on July 9 and August 27, 2020, at which both parties testified under oath. Plaintiff expressed her desire for the FRO to remain in place. Plaintiff stated that knowing that she had a restraining order against defendant let her feel safe enough to sleep at night. Plaintiff also asserted that defendant's repeated motions to vacate the FRO were attempts to "inject herself back into [plaintiff's] life."

Plaintiff also presented evidence that in May 2020—two months after the present Carfagno motion was filed—another attorney representing defendant sent a derogatory letter about plaintiff to plaintiff's church. The letter made "serious accusations of abuse" and criminal behavior by plaintiff. See infra note 3. Counsel representing defendant at the Carfagno hearing was unaware of that correspondence. The hearing was adjourned to allow counsel to review the contents of the letter.

On January 19, 2021, the motion court rendered a four-page written opinion, followed by a February 8, 2021, order denying defendant's motion to vacate or modify the FRO. This appeal followed.

Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT INCORRECTLY APPLIED THE FACTORS SET FORTH IN Carfagno v. Carfagno, 288 N.J. Super. 424 (Ch. Div. 1995).

THE TRIAL COURT ERRONEOUSLY FAILED TO CONDUCT A PLENARY HEARING ON THE ISSUE OF THE VACATION OF THE FINAL RESTRAINING ORDER.

II.

Because we affirm substantially for the reasons explained in the trial court's written opinion, we need not readdress defendant's contentions at length. We add the following comments:

As a general matter, findings by a Family Part judge are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Invs Ins. Co., 65 N.J. 474, 484 (1974)). The Family Part has special jurisdiction and expertise in these matters. Cesare, 154 N.J. at 413. Accordingly, an appellate court should not disturb the trial court's factfinding unless the court is "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

The Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, is designed to assure victims of domestic violence "the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. However,

"[t]he Legislature did not intend that every final restraining order issued pursuant to the [PDVA] be forever etched in judicial stone." A.B. v. L.M., 289 N.J. Super. 125, 128 (App. Div. 1996). Accordingly, the PDVA expressly provides that a defendant may move to dissolve or modify an FRO upon a showing of "good cause shown . . . ." N.J.S.A. 2C:25-29(d). In determining if the applicant has shown good cause, the trial court should consider the non-exhaustive list of factors set forth in Carfagno. 288 N.J. Super. at 435; see also Sweeney v. Honachefsky, 313 N.J. Super. 443, 447–48 (App. Div. 1998). These factors include:

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
>
> [Carfagno, 288 N.J. Super. at 435.]

The relevant factors are to be weighed "qualitatively, and not quantitatively. . . ." Id. at 442. Importantly, when applying and weighing the

A-1937-20

relevant factors, trial courts must remain mindful of the foundational principle that the PDVA is intended to assure victims of domestic violence the maximum protection from abuse the law can provide. As we explained in Kanaszka v. Kunen, "[w]ith protection of the victim the primary objective, the [trial] court must carefully scrutinize the record and carefully consider the totality of the circumstances before removing the protective shield." 313 N.J. Super. 600, 605 (App. Div. 1998).

"Generally, a court may dissolve an injunction where there is 'a change of circumstances [whereby] the continued enforcement of the injunctive process would be inequitable, oppressive, or unjust, or in contravention of the policy of the law.'" Carfagno, 288 N.J. Super. at 433–34 (alteration in original) (quoting Johnson & Johnson v. Weissbard, 11 N.J. 552, 555 (1953)). "Only where the movant demonstrates substantial changes in the circumstances that existed at the time of the final hearing should the court entertain the application for dismissal [of a domestic violence FRO]." Kanaszka, 313 N.J. Super. at 608.

III.

We first address defendant's argument that she was precluded from presenting the entire history of the parties' relationship, which, defendant contends, would have shown that plaintiff did not fear defendant (Carfagno

10

factor two) and was not acting in good faith in opposing defendant's request to dissolve the FRO (factor nine). Defendant argues that the trial court erred by not holding a plenary hearing at which defendant would have an opportunity to provide the testimony she was unable to present at the FRO hearing that was conducted in her absence. We reject defendant's contention for the reasons explained by the trial court. A <u>Carfagno</u> application is not a forum in which to relitigate the FRO hearing. See <u>ibid.</u> (movant must demonstrate "substantial changes in the circumstances <u>that existed at the time of the final hearing</u> . . . ."). Nor is it a substitute for a direct appeal taken from the grant of an FRO.

In <u>Kanaszka</u>,

> [w]e emphasize[d] that not every motion for dissolution of a domestic violence restraining order requires a plenary hearing. In <u>Carfagno</u> a plenary hearing was needed to resolve factual disputes on the issue of whether defendant violated the restraining order since its issuance. We [were] in accord with the reasoning of [the Court] in <u>M.V. v. J.R.G.</u>, 312 N.J. Super. 597, 599–600 (Ch. Div. 1997), that the moving party has the burden to make a prima facie showing good cause exists for dissolution of the restraining order prior to the judge fully considering the application for dismissal. If that burden is met, the court should then determine whether there are facts in dispute material to a resolution of the motion prior to ordering a plenary hearing. Conclusory allegations should be disregarded. <u>See</u> <u>Lepis v. Lepis</u>, 83 N.J. 139, 159 (1980).
>
> [313 N.J. Super. at 608.]

A-1937-20

In the matter before us, the factual dispute between the parties that defendant argues must be resolved at a plenary hearing does not relate to circumstances that occurred after the FRO was issued. Accordingly, there was no factual dispute "material to the resolution" of the Carfagno motion. Rather, defendant in practical effect seeks to challenge and counter plaintiff's FRO trial testimony regarding their relationship and past history of domestic violence. It bears emphasis that defendant was afforded the opportunity at the Carfagno hearing to present testimony relevant to the Carfagno factors. Defendant was not entitled, however, to relitigate the initial FRO decision. As the motion court aptly explained:

> The Defendant cannot now argue for the dismissal of the Restraining Order because she did not/could not attend the Final Hearing.[2] The Defendant's remedy

---

[2] Defendant belatedly offered the following explanation for her failure to attend the FRO hearing despite being served with notice of that court event by summons:

> At approximately 1:30 a.m. on February 3, 2015, Defendant was released from jail after posting bail. Her bail bondsman called her that same morning for her to check in with him and sign paperwork in Newark, New Jersey. She was told by her bail bondsman to meet with him first, and since she had never been through a process like this before, she followed his instructions. She met with him at noon on February 13, 2015. During the meeting and after checking her file, the bail bondsman informed Defendant that she was due in court for the FRO in less than an hour. She immediately left, stopped to get

was to appeal [the FRO trial court's] decision. Instead she filed a Motion to Reconsider then later a Motion to Dismiss the Restraining Order. This leads to the Court's conclusion that the matter was previously adjudicated before [the FRO trial court] and should only be addressed now if there are circumstances or factors different from those set forth in the Defendant's prior two Motions. She failed to appeal [the FRO trial court's] decision to enter a Final Restraining Order, failed to appeal the Judge's decision denying her Motion to Reconsider the Final Restraining Order decision and failed to appeal the Judge's decision denying her Motion to Dismiss the Final Restraining Order.

In <u>Kanaszka</u>, we made clear that

> The victim should not be forced to repeatedly relitigate issues with the perpetrator, as that itself can constitute a form of abusive and controlling behavior. Only where the movant demonstrates substantial changes in the circumstances that existed at the time of the final hearing should the court entertain the application for dismissal.
>
> [313 N.J. Super. at 608.]

---

her paperwork and headed straight to court. However, she arrived late and to exacerbate the situation, she went to the wrong location at first. When she finally arrived at the correct courtroom, she was told that she missed the hearing and that the FRO had been issued against [her]. She was served with the FRO the following day.

Relatedly, we reject defendant's argument that the motion court did not have a full record upon which to decide the Carfagno application. That argument proceeds from a misunderstanding of the law. The PDVA provides:

> Upon good cause shown, any final order may be dissolved or modified upon application to the Family Part of the Chancery Division of the Superior Court, but only if the judge who dissolves or modifies the order is the same judge who entered the order, or has available a complete record of the hearing or hearings on which the order was based.
>
> [N.J.S.A. 2C:25-29(d) (emphasis added).]

Neither party disputes that the judge who heard the Carfagno motion was not the judge who heard the FRO trial and entered the FRO. Defendant argues that the motion judge did not have a "complete record" for purposes of N.J.S.A. 2C:25-29(d) because defendant did not testify at the FRO trial. That argument misconstrues the statute. The record is "complete" if it includes "at a minimum, all pleadings and orders, the court file, and a complete transcript of the final restraining order hearing." Kanaszka, 313 N.J. Super. at 606. In this instance, the motion court had all of the documents required to render a decision under Carfagno.

IV.

We turn finally to the substantive merits of defendant's Carfagno application. We are satisfied the motion court appropriately considered the

14

Carfagno factors and determined that the defendant had not shown good cause to dissolve the FRO. The trial court made findings with respect to each factor, explaining:

> [h]ere several factors do weigh in the Defendant's favor such as the parties' lack of any current relationship, no contempt convictions, no apparent drug or alcohol abuse, no other violent acts, Defendant's involvement in counseling and the fact that there are no Restraining Orders from other jurisdictions.
>     Factors which weigh in favor of the Plaintiff include the fact that she does not consent to the lifting of the Restraining Order, that she continues to fear the Defendant, that the Defendant does not suffer from any age or health issue which would diminish her ability to engage in future acts of violence and that she is acting in good faith opposing the Defendant's application.
>     In terms of balancing all of the factors while evaluating whether or not good cause is shown to dissolve the Restraining Order, there seems to be some equality however a significant factor presented by the Plaintiff seems to weigh in her favor and establish a reason for denying the Defendant's Motion.

On appeal, defendant challenges the motion court's application of factor two ("Whether the victim fears the [d]efendant") and nine "(Whether the victim is acting in good faith, when opposing a [d]efendant's request.") The FRO trial judge found plaintiff's fear both credible and reasonable. The motion judge found plaintiff was acting in good faith in opposing the dissolution of the FRO. In stark contrast, the motion judge found that

15

defendant's motivation for seeking the dismissal of the FRO was "suspect[,]" particularly in light of the letter sent to the victim's church on defendant's behalf.[3] We accept those findings, which have substantial support in the record. See Cesare, 154 N.J. at 412.

Ultimately, the motion court found "that an overall evaluation of all the salient factors set forth in [Carfagno] to evaluate 'good cause' leads to the conclusion that the [d]efendant continues to make attempts to engage in litigation involving the [plaintiff] and that it appears to be a manifestation of the Defendant's unhealthy desire to control; abuse or negatively affect the victim." On that basis, the trial court denied defendant's motion to vacate the FRO. We see no reason to disturb that decision, as it is supported by adequate, substantial, credible evidence.

---

[3] The motion court found that defendant was engaging in litigation that was "a manifestation of a perpetrator's unhealthy desire to control or abuse a victim." (quoting Kanaszka, 313 N.J. Super. at 600). The motion court noted that the letter provided to plaintiff's church was "evidence that the [d]efendant as recent as May, 2020 ha[d] engaged in conduct through the use of civil counsel to accuse the [p]laintiff and members of her church with what amounts to criminal behavior against the [d]efendant." The trial court concluded that the serious accusations of abuse in the letter were "a backdoor way of seeking to punish the [p]laintiff under the shield of civil litigation related to very old accusations."

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1937-20