**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3899-22

T.B.,

    Plaintiff-Respondent,

v.

I.W.,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

August 5, 2024

APPELLATE DIVISION

Submitted May 28, 2024 – Decided August 5, 2024

Before Judges DeAlmeida, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-3713-23.

Rosenberg Perry & Associates, LLC, attorneys for appellant (Robert M. Perry, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

BERDOTE BYRNE, J.A.D.

Defendant appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A.

2C:25-17 to -35, based upon predicate acts of sexual assault, N.J.S.A. 2C:14-2, lewdness, N.J.S.A. 2C:14-4, and harassment, N.J.S.A. 2C:33-4. He contends the trial court failed to make factual or credibility findings, and abused its discretion in entering an FRO after drawing an adverse inference when he chose not to testify. We conclude the trial court failed to make sufficient findings of fact and conclusions of law, vacate the FRO, reinstate the amended temporary restraining order (TRO), and remand for a new FRO hearing. Additionally, we hold a trial court may not draw an adverse inference in an FRO proceeding based solely upon defendant's decision to invoke his Fifth Amendment right to not testify.

I.

We glean the following facts from the FRO hearing record. Plaintiff obtained a TRO on June 4, 2023, alleging defendant sexually assaulted her in his apartment while their son was in a separate room. She later amended the TRO, first on June 19, 2023, and again on July 10, 2023, to include details regarding the sexual assault, prior history of alleged domestic violence, and additional acts of harassment and lewdness. Specifically, the amended TROs outlined various events occurring between March 2021 to April 2023, including a previous sexual assault and two prior TROs. Both earlier TROs were dismissed, one by court order and the other at plaintiff's request.

During the one-day trial, where both parties were represented by counsel, plaintiff testified on her own behalf and defendant elected to not testify, with his counsel claiming "the Fifth Amendment is such a compelling amendment, it is bedrock a part of due process that a defendant shouldn't be compelled to testify" and "it forces a defendant to reveal a defense, when they would not have to otherwise."

Plaintiff testified she and defendant were in a dating relationship for approximately three years before the relationship ended. She also explained that she and defendant have a child together, who was then two years old. She stated on the day of the alleged sexual assault, defendant exercised his scheduled overnight parenting time at his apartment, pursuant to their agreement. Plaintiff explained she would often sleep on a mattress on the floor with their son while defendant slept in his bed during overnight parenting time at defendant's apartment, even though there was no requirement for supervised visits.

That night, plaintiff slept over and awoke to defendant sitting next to her mattress, masturbating. Defendant told her to watch him and get in his bed. Plaintiff left the room without replying and sat on the couch. Defendant followed her, sat on the couch, and continued to masturbate. She detailed how defendant forced her to perform oral sex on him, removed her clothing, and

3

then forcibly penetrated her with his penis and fingers despite her repeated protests. After the incident concluded, their son began crying and plaintiff returned to her son to put him back to sleep. She also stated later that morning, she awoke again to defendant masturbating near her. That evening plaintiff received medical treatment at a hospital for pain in her abdomen and notified staff of the sexual assault. Two days later, she reported the assault to the police and obtained the TRO.

In addition to the allegations of sexual assault, plaintiff recounted past incidents of domestic violence from March 2021 to April 2023, including "forceful sex" while she was pregnant, continuous name-calling coupled with profanities, aggressive behavior, and other incidents where defendant masturbated in the presence of plaintiff and their son.

After plaintiff's testimony, the trial court granted the FRO, concluding defendant committed the predicate act of sexual assault and that act "would cover such acts as harassment [and] lewdness" because "[t]hat's all piled in the predicate act." The court relied on defendant's decision to not testify, stating when a defendant chooses to not testify, the court may draw an adverse inference to find the alleged acts occurred. It further explained, although it did not "know if every single act occurred," it was "satisfied given the [adverse]

inference that the act did occur. The substantial abuse did occur, and that would be on the level of the [s]exual [a]ssault."

The court acknowledged defendant had filed a complaint seeking parenting time and the parties had been in litigation regarding the issue for over two years. It did not address plaintiff's credibility, and acknowledged plaintiff may have had "an interest [in requesting a[n] FRO] possibly with respect to the issue of parenting time." It also noted the previous number of dismissed TROs and civil restraint agreements between the parties.

The court stated "[t]his is not an easy case" and "[w]e have no experts in this case. But we do [know] what the interests are, what's logical, what's probable, reasonable. I get to the point where I get that [adverse] inference, and plaintiff is successful in this case." It found: "[t]hat inference, the [c]ourt is satisfied is adequate for the [c]ourt to make [its] finding that these horrific acts alleged by the plaintiff occurred." This appeal followed.

## II.

Our review of an FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207

N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Consequently, findings by a court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We do not disturb a court's findings unless those findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We do not accord such deference to the court's legal conclusions, which we review de novo. C.C., 463 N.J. Super. at 428.

When determining whether to issue an FRO pursuant to the PDVA, a court must make two distinct determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021).

A.    Lack of Findings.

In this matter, the trial court failed to make sufficient findings of fact and conclusions of law. Plaintiff alleged predicate acts of sexual assault, harassment, and lewdness. Although the court found defendant committed the predicate act of sexual assault, it did so without reference to any specific facts, and failed to make any credibility determinations regarding plaintiff's testimony. The court failed to cite the elements of the alleged three predicate acts, the PDVA, or, pursuant to the second prong of Silver, whether an FRO was necessary to protect plaintiff from future risk of harm. Moreover, the court failed to address plaintiff's allegations of harassment and lewdness, except to conclude proving sexual assault encompassed proving the predicate acts of harassment and lewdness.

A trial court "shall, by opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." R. 1:7-4(a). When a trial court does not "articulate precise findings of fact and conclusions of law" to explain its conclusions, the matter must be remanded for a re-hearing. See J.D., 207 N.J. at 486-88; Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" (quoting

A-3899-22

Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))). The trial court's failure to make factual findings and legal conclusions does not afford us any meaningful opportunity to review its rulings, requiring our reversal and remand.

B.    Drawing an Adverse Inference.

Our reversal is also required because the trial court relied upon an adverse inference it drew against defendant solely because he invoked his Fifth Amendment privilege not to testify. We conclude, as a matter of law, it is not appropriate for the court to draw an adverse inference solely from defendant's invocation of his Fifth Amendment right to not testify in an FRO hearing. Despite the remedial nature of the PDVA, and the statute's language insulating a defendant's testimony from use in a criminal proceeding relating to the same act, a defendant's election to not testify cannot give rise to an adverse inference in an FRO hearing.

Our Supreme Court mentioned the potential use of an adverse inference in H.E.S. v. J.C.S., 175 N.J. 309 (2003). H.E.S. involved the Court's review of whether a defendant's due process rights were violated where he received notice of a domestic violence complaint less than twenty-four hours before trial, where a domestic violence finding was made despite not being alleged in the complaint, and the then-novel issue of whether video surveillance by one spouse of the other spouse may constitute one of the predicate offenses of

domestic violence. Because defendant had declined to testify at the FRO hearing regarding the alleged surveillance out of fear "that doing so would expose him to criminal charges under the Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -34," id. at 331, the Court noted in dicta that the defendant may be subject to wiretapping charges, and "an unfavorable inference should not be drawn against defendant if he elects not to testify on the remand." Ibid.

However, no reported case law in New Jersey addresses whether an adverse inference may be drawn in a FRO hearing based solely on the defendant's decision to not testify. We are aware that unpublished cases addressing this issue have employed varying approaches. This lack of clarity was evident when defendant's counsel informed the court defendant had elected to not testify and the following colloquy ensued:

> THE COURT:  Is your client going to testify?
>
> COUNSEL:  Unlikely, Judge.
>
> THE COURT:  Okay.
>
> COUNSEL:  And Judge, just for the [c]ourt's [edification], one of the applications that I'm going to be making to the [c]ourt is to have written summations. It's my intention to get the transcript of this proceeding. So, I understand that's within the [c]ourt's purview.

THE COURT: Well, you do understand that the [c]ourt can take an inference, if your client does not testify?

COUNSEL: Judge, I disagree with that.

THE COURT: Oh, I've researched this on numerous occasions. But if your client does not testify in this civil proceeding, the [c]ourt can take an adverse [inference].

COUNSEL: Judge, I look forward to the authority that says that. I, personally, have not found that authority, because I, too, have researched this issue. If that's the [c]ourt's ruling, obviously, that's the [c]ourt's ruling.

THE COURT: Well, that will be the [c]ourt's ruling, unless you have other evidence that you want to present.

. . . .

The trial court then denied the application for written submissions, ruled orally after the hearing, and relied upon an adverse inference without citing to any legal authority.

A defendant is entitled to invoke his right against self-incrimination pursuant to the Fifth Amendment, which is codified in N.J.S.A. 2A:84A–19, and pursuant to N.J.R.E. 503. The United States Supreme Court has recognized the Fifth Amendment protects a person not only in criminal prosecutions, but also in answering "official questions put to him [or her] in any other proceeding, civil or criminal, formal or informal, where the answers might

10

incriminate him in future criminal proceedings." <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 316 (1976) (quoting <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973)); <u>see</u> <u>also</u> <u>Lefkowitz v. Cunningham</u>, 431 U.S. 801, 805 (1977) ("[S]ince the test is whether the testimony might later subject the witness to criminal prosecution, the privilege is available to a witness in a civil proceeding, as well as to a defendant in a criminal prosecution."); <u>State v. P.Z.</u>, 152 N.J. 86, 101 (1997). Our Supreme Court has "treated our state privilege as though it were of constitutional magnitude, finding that it offers broader protection than its Fifth Amendment federal counterpart." <u>State v. O'Neill</u>, 193 N.J. 148, 176–77 (2007).

Although "[a] domestic violence complaint is civil in nature," <u>M.S. v. Millburn Police Dept.</u>, 197 N.J. 236, 248 (2008); <u>Crespo v. Crespo</u>, 408 N.J. Super. 25, 32–34 (App. Div. 2009), a defendant who elects to testify must necessarily address the criminal predicate acts alleged. <u>D.N. v. K.M.</u>, 429 N.J. Super. 592, 605-06 (App Div. 2013) ("One distinction between the [PDVA] and other remedial legislation is the conduct regulated by the Act is grounded in offenses defined in the Criminal Code.") Also, violations of an FRO are punishable as criminal contempt proceedings. <u>State v. Hoffman</u>, 149 N.J. 564, 590 (1997) ("The primary purpose for tying the contempt conviction to criminal conduct is to elevate the seriousness of the contempt from a

11

disorderly persons offense to a fourth-degree crime.") Thus, an FRO hearing is distinguishable from other civil proceedings.

Additionally, we have noted there are significant "adverse consequences of certain civil proceedings [that] could be 'as devastating as those resulting' from a criminal conviction . . . ." D.N. v. K.M., 429 N.J. Super. at 602 (quoting Pasqua v. Council, 186 N.J. 127, 142 (2006)). The entry of an FRO is one of them.

First, the permanence of an FRO in New Jersey is distinguishable from other states because an FRO does not expire. See N.J.S.A. 2C:25-29; M.V. v. J.R.G., 312 N.J. Super. 597, 601. Instead, a party must present an application to the court requesting dissolution of an FRO and demonstrate good cause. N.J.S.A. 2C:25-29(d).

Secondly, "[p]enalties in a PDVA FRO . . . can be . . . severe." C.R. v. M.T., 257 N.J. 126, 144 (2024); see A.A.R. v. J.R.C., 471 N.J. Super. 584, 588 (App. Div. 2022); Franklin v. Sloskey, 385 N.J. Super. 534, 541 (App. Div. 2006) (recognizing "the issuance of an FRO 'has serious consequences to the personal and professional lives of those who are found guilty of what the Legislature has characterized as a "serious crime against society"'" (quoting Bresocnik v. Gallegos, 367 N.J. Super. 178, 181 (App. Div. 2004)). Issuance of an FRO subjects a defendant to fingerprinting, N.J.S.A. 53:1–15, and entry

into the domestic violence registry maintained by the Administrative Office of the Courts, N.J.S.A. 2C:25-34. Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005). A defendant's current residence and child custody may also be impacted by the entry of an FRO. It may impede a defendant's future employment in certain fields. Franklin, 385 N.J. Super. at 541. Additionally, "[a] defendant must 'immediate[ly] surrender . . . any firearm,' and an FRO must prohibit the defendant from purchasing, owning, or possessing any weapons." C.R., 257 N.J. at 144 (second alteration in original) (quoting N.J.S.A. 2C:25-29(b)). The Family Part "may also impose a number of other wide-reaching sanctions" that impair "a defendant's interests in liberty and freedom in order to prevent further abuse." A.A.R., 471 N.J. Super. at 588 (quoting Peterson, 374 N.J. Super. at 124); N.J.S.A. 2C:25-29(b).

Generally, in a civil action, a court may draw an adverse inference when a party invokes his or her Fifth Amendment right against self-incrimination. State, Dep't of Law & Pub. Safety, Div. of Gaming Enf't v. Merlino, 216 N.J. Super. 579, 587 (App. Div. 1987). The rationale for permitting an adverse inference in civil matters derives from notions of fairness; it exists "to level 'the playing field where evidence has been hidden or destroyed.'" Lanzo v. Cyprus Amax Minerals Co., 467 N.J. Super. 476, 519 (App. Div. 2021) (quoting Rosenblit v. Zimmerman, 166 N.J. 391, 401 (2001)). If a defendant

13                                                                    A-3899-22

elects not to testify, the invocation prevents the opposing party from discovering potentially relevant and probative facts, putting that party at a disadvantage. See Baxter, 425 U.S. at 318; Duratron Corp. v. Republic Stuyvesant Corp., 95 N.J. Super. 527, 533 (App. Div. 1967).

In a domestic violence proceeding, such rationale is inapplicable. To sustain his or her burden, a plaintiff in an FRO hearing must prove the two prongs of Silver by a preponderance of the evidence, presenting evidence and testimony to establish the burden, notwithstanding the defendant's rebuttal. Because the PDVA "tests a victim's entitlement to relief in accordance with the preponderance of the evidence standard, consistent with the lowered burden of proof appropriate in a civil proceeding[,]" J.D., 207 N.J. at 474, a plaintiff who cannot meet this burden is not entitled to an FRO. The defendant's testimony is not necessary for a plaintiff to secure the protections of an FRO.[1]

And, although the PDVA affords defendants certain protections by preventing testimony given in an FRO hearing from being used against that defendant in a related criminal proceeding, that protection is circumscribed

---

[1] The State of New Jersey Domestic Violence Procedures Manual issued under the authority of the Supreme Court and the Attorney General acknowledges courts are permitted to "proceed with the FRO hearing and may enter a[n] FRO without an appearance by the defendant." State of N.J. Domestic Violence Procedures Manual, Defendant (non-appearance) at 54 (2022).

14

and does not encompass the broader protection afforded by the Fifth Amendment and N.J.R.E. 503. The PDVA provides:

> If a criminal complaint arising out of the same incident which is the subject matter of a complaint brought under [the PDVA] has been filed, testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant, other than domestic violence contempt matters and where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable.
>
> [N.J.S.A 2C:25-29(a).]

Despite the stated protection, the last sentence allows a party's testimony to be used in the related criminal proceeding arising out of the same incident in certain circumstances, such as for impeachment purposes. See State v. Dupree, 427 N.J. Super. 314, 316-17, 324 (App. Div. 2012) ("[D]espite the language of N.J.S.A. 2C:25-29(a) that 'testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant,'" such testimony may be used for the purpose of cross-examination.)

Also, the protection afforded to a testifying defendant by the statute is limited to "simultaneous or subsequent criminal proceeding[s]" arising out of the same incident as the domestic violence action, and does not contemplate or protect against the use of that testimony in unrelated proceedings. Therefore,

A-3899-22

testimony by a defendant in an FRO proceeding may expose a defendant to charges of other criminal activity not related to the predicate acts raised in the FRO hearing. Finally, although records are sealed, FRO hearings occur in open court, where a prosecutor or any member of the public may attend. N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 275 (App. Div. 2018) (Koblitz, J., concurring). For these reasons, a defendant should not be compelled to testify at an FRO hearing merely to prevent an adverse inference from being drawn.

We are mindful of the New Jersey Legislature's long-standing support for victims of domestic violence. See Brennan v. Orban, 145 N.J. 282, 298 (1996) ("[W]e believe there is no such thing as an act of domestic violence that is not serious. Every action of recent Legislatures has been intended to underscore the serious nature of the domestic violence problem in our society."); State v. Kelly, 97 N.J. 178 (1984). Nothing in our conclusion today impacts a domestic violence victim's ability or statutory right to obtain an FRO in the absence of a defendant's testimony, and accords with the Legislature's laudable broad, remedial purpose in enacting the statute. Moreover, our holding does not prevent a trial court in an FRO hearing from noting the plaintiff's testimony is uncontroverted when assessing plaintiff's credibility.

 A-3899-22

The matter is reversed and remanded for a new FRO hearing in conformity with this opinion. Because the judge who heard the matter has already engaged in weighing some of the evidence, the hearing shall take place before a different judge. See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 617 (1986); see also Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999); and then citing P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999)).

The FRO dated July 12, 2023 is vacated and the amended TRO dated July 10, 2023 is reinstated pending a new FRO hearing. We take no position regarding the outcome of the FRO hearing.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3899-22